UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

TYRELLE MOTRAY HENDERSON,
JR.,

                   Plaintiff,

v.

COUNTY OF KENT, et al.,

                   Defendants.

_____/

Case No. 1:24-cv-1270

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by county detainee under 42 U.S.C. § 1983.
The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate
order.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil
Procedure, Plaintiff consented to proceed in all matters in this action under the
jurisdiction of a United States Magistrate Judge.  (ECF No. 1, PageID.12; ECF No. 7,
PageID.38.)

This case is presently before the Court for preliminary review under the Prison
Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant
to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court is
required to conduct this initial review prior to the service of the complaint.  *See In re
Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v.
Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the

named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that

"[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

standards, the Court will partially dismiss Plaintiff's amended complaint for failure to state a claim for the reasons detailed below.  Plaintiff's "motion to alter and amend and/or relief from judgment" (ECF No. 8) will be denied as moot.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan.  The events about which he complains occurred at that facility.  Plaintiff sues Kent County, Vital Core Health Strategies, and the following KCCF staff: Captain Brad Lyons; Lieutenant Unknown Pavlovic; Deputies John Does #1–3; Sergeant John Doe #4; Physician Jane Doe #1; Nurses Jane Does #2–3; Physician John Doe #5; and Inmate John Doe.  (Am. Compl., ECF No. 7, PageID.30, 32–33.)  Plaintiff sues all Defendants, except Defendant Inmate John Doe, in their individual and official capacities.  (*Id.*)  Plaintiff sues Defendant Inmate John Doe in his individual capacity.  (*Id.*, PageID.33.)

In Plaintiff's amended complaint, he alleges that on October 22, 2024, while detained at KCCF, "one of the 'John Doe' deputie(s)" "communicated a false statement to" Defendant Inmate John Doe via the intercom, stating that Plaintiff had "called silent observer and got [the inmate's] visit cancelled."[2] (*Id.*, PageID.35–36.)  Plaintiff claims that Defendant Inmate John Doe "communicated this false statement to other inmate(s) in the dayroom and eventually other parts of the facility," which "harmed

---

[2] In this opinion, the Court corrects the capitalization and punctuation in quotations from Plaintiff's filings.

[Plaintiff's] reputation." (*Id.*, PageID.36.) Plaintiff claims that "now numerous inmates" at KCCF "believe and have been calling [him a] snitch[] and an informant." (*Id.*)

At some point later on October 22, 2024, Plaintiff alleges that Defendant Inmate John Doe "performed harmful contact with the intention to cause great bodily harm to [Plaintiff's] person." (*Id.*, PageID.34.) Plaintiff states that this interaction occurred in the dayroom, and as a result, Plaintiff's "back, ribs, arm, head, and knee got injured and there was also a blood clo[t] in [Plaintiff's] eye." (*Id.*)

Plaintiff claims that one of the Defendant "John Doe" deputies had let Defendant Inmate John Doe "out of his cell during [Plaintiff's] dayroom time while the other two Defendant(s) allowed him to, knowing said false statement [regarding Plaintiff calling silent observer], and [the] action of letting that inmate out [of] his cell placed [Plaintiff] in serious imminent danger." (*Id.*, PageID.36.) Plaintiff also claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "allowed" Defendant Inmate John Doe "out of his cell for a scheduled visit" pursuant to KCCF's "'custom' to allow visits in the dayroom when it's not the inmate[] who has the visit scheduled dayroom time, nor was this particular inmate suppose[d] to be let out [of] his cell due to his visit being priorly rescheduled." (*Id.*) Additionally, Plaintiff alleges that KCCF has a "'custom' of allowing bottom deck housing unit inmate(s) out [of] their cell during the top deck housing unit inmate(s) dayroom time," which he claims "is the proximate cause of [his] injuries" from Defendant Inmate John Doe's attack. (*Id.*, PageID.35.)

Plaintiff further claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "observed the harm done to [Plaintiff's] person and/or had reason to know that [Plaintiff] was being battered or would be due to the fact the incident [wa]s caught on [the] housing unit camera," and Plaintiff "had been previously submitting kites" to Defendants Lieutenant Pavlovic and Captain Lyons "in regards to [Plaintiff's] security level not being proper, and that [Plaintiff] feared being housed with alleged murderers for safety reason[s]." (*Id.*, PageID.34–35.) Plaintiff alleges that Defendants Lieutenant Pavlovic and Captain Lyons had not responded to Plaintiff's kites, and "no administrative staff would give [Plaintiff] a grievance." (*Id.*, PageID.35.)

After the attack by Defendant Inmate John Doe, Plaintiff alleges that one of the Defendant "John Doe" deputies and Defendant Sergeant John Doe #4 "used the category (2) D.R.U.[3] violation for the ulterior purpose to punish [Plaintiff] for attempting to act in self-defense, with them using process improperly to deprive [Plaintiff] of [his] pre-trial liberties for [ten] days without adequate process." (*Id.*)

Additionally, Plaintiff alleges that from October 22, 2024, "through the present," Defendants Nurses Jane Does #2–3, Physician Jane Doe #1, and Physician John Doe #5 "breached their duty to provide [Plaintiff] the appropriate standard of care for [his] injuries that resulted from the battery." (*Id.*, PageID.36.)  Plaintiff alleges that Defendants Physicians Jane Doe #3 and John Doe #5 "made a statement in similarity in regards to [Plaintiff's] continu[]ous back problems, stating, 'he's a

---

[3] Plaintiff does not define "D.R.U." in his amended complaint.

young guy, he will heal,'" and "also refused to give [Plaintiff] a[n] x-ray on [his] back."
(*Id.*, PageID.36–37.)  Plaintiff states the "x-ray was only completed on January 25,
2025."  (*Id.*, PageID.37.)  Plaintiff alleges that "the current problems [he is] having
with [his] back now are the proximate result of" Defendant Vital Core Health
Strategies' employees' "'custom' of breaching the applicable standard of care to
indigent inmate(s) and/or inmate(s) who are harmed in facility[-]related incidents."
(*Id.*)

Finally, Plaintiff alleges that all Defendants "conducted themselves in a[n]
extreme and outrageous manner with the intention of reckless disregard for
[Plaintiff's] injuries and/or constitutional rights, and the fact that their actions are
inflicting severe emotional distress."  (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his
rights under the Eighth and Fourteenth Amendments to the United States
Constitution.  (*See id.*, PageID.34–36.)  Plaintiff also avers that Defendants engaged
in a civil conspiracy under 42 U.S.C. § 1983.  (*Id.*, PageID.36.)  Additionally, Plaintiff
avers that Defendants violated state law.  (*See id.*, PageID.34, 36–37.)  As relief,
Plaintiff seeks "compensatory, consequential, nominal, and punitive damages."  (*Id.*,
PageID.38.)

## II.    Motion to Alter or Amend Judgment

Plaintiff filed a "motion to alter and amend and/or relief from judgment."  (ECF
No. 8.)  In the motion, Plaintiff asks the Court to reconsider the final judgment in this
case.  (*See id.*)  However, no final judgment has been entered in this case, and
therefore, there is no final judgment in this action for the Court to reconsider.

Accordingly, Plaintiff's "motion to alter and amend and/or relief from judgment" will be denied as moot.

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly*/*Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Inmate John Doe

As noted above, to state a claim under § 1983, the plaintiff must allege that a person acting under color of state law committed the constitutional deprivation at issue. *See West*, 487 U.S. at 48; *Street*, 102 F.3d at 814. Therefore, to the extent that Plaintiff seeks to bring any § 1983 claims against Defendant Inmate John Doe, a fellow detainee, Plaintiff fails to state any such claims because Defendant Inmate John Doe is not a person acting under color of state law. Accordingly, any § 1983 claims against Defendant Inmate John Doe will be dismissed for failure to state a claim.[4]

---

[4] Plaintiff specifically states that he is not seeking to compel the prosecution of Defendant Inmate John Doe and that he seeks "civil/monetary relief only." (ECF No. 9, PageID.43 (submitting an "affidavit of nonprosecution").)

**B.**    **Defendants Kent County and Vital Core Health Strategies, and Official Capacity Claims Against Individual Defendants**

Plaintiff names Kent County and Vital Core Health Strategies as Defendants in this action, and he sues all Defendants, except Defendant Inmate John Doe, in their individual and official capacities. (Am. Compl., ECF No. 7, PageID.30, 32–33.)

Official capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55 (1978)).  That is, an official capacity suit is to be treated as a suit against the entity itself.  *Id.* at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).  Therefore, if Defendants are employed by Kent County, then an official capacity suit is treated as a suit against the county itself, and likewise if Defendants are employed by Vital Core Health Strategies, then an official capacity suit is treated as a suit against Vital Core Health Strategies itself.

A private entity, such as Vital Core Health Strategies, that contracts with a governmental entity to perform a traditional governmental function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'"  *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54).  The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983.  *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell*, 436 U.S. 658, has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406,

10

409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

As explained below, Plaintiff's allegations against Kent County and Vital Core Health Strategies essentially rest on a theory of vicarious liability and therefore do not state a claim.  First, as to Kent County, Plaintiff claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "allowed" Defendant Inmate John Doe "out of his cell for a scheduled visit" pursuant to KCCF's "'custom' to allow visits in the dayroom when it's not the inmate(s) who has the visit scheduled dayroom time, nor was this particular inmate suppose[d] to be let out [of] his cell due to his visit being priorly rescheduled."  (Am. Compl., ECF No. 7, PageID.36.) Additionally, Plaintiff alleges that KCCF has a "'custom' of allowing bottom deck housing unit inmate(s) out [of] their cell during the top deck housing unit inmate(s) dayroom time," which he claims "is the proximate cause of [his] injuries" from Defendant Inmate John Doe's attack.  (*Id.*, PageID.35.)

Although Plaintiff claims that there is a custom or policy regarding when inmates use the dayroom at KCCF and that he was attacked by another inmate while using the dayroom, Plaintiff presents no other facts to show that any custom or policy was the moving force behind his constitutional injury.  Indeed, Plaintiff simply relies on the existence of dayroom hours in an attempt to hold Kent County liable.  However, the fact that KCCF allows inmates to use the dayroom does not on its own show that a custom or policy was the moving force behind any constitutional injury that occurs in KCCF's dayroom.  If this was the case, then any time a county detainee was attacked by another inmate while using the dayroom, the county would be liable simply because the county had a dayroom; but, these facts would be insufficient to

state a claim against the county because a county may not be held vicariously liable for the individual acts of its employees.  In this case, based on the facts alleged in the amended complaint, it is clear that it was the individual actions of the "John Doe" deputies (i.e., telling Defendant Inmate John Doe that Plaintiff had "snitched" on him) that resulted in the altercation between Plaintiff and Defendant Inmate John Doe, not any policy or custom of Kent County that resulted in this altercation.  The fact that the altercation occurred during dayroom hours does not on its own make the county liable for the actions of the individual Defendants.  *See Lipman*, 974 F.3d at 747 (citation omitted).  Moreover, Plaintiff alleges no facts to suggest that prior to the altercation, Plaintiff and Defendant Inmate John Doe were housed on different housing units in order to keep them separate from each other.  Thus, although the altercation occurred when the upper and lower deck housing units were both using the dayroom, based on the facts alleged by Plaintiff, it was the actions of the individual Defendants that led to the altercation, not the fact that the two housing units were in the dayroom.  That is, the altercation occurred when the two housing units happened to be using the dayroom at the same time, but this was not the moving force behind the alleged constitutional violation.

As to Vital Core Health Strategies, Plaintiff alleges that "the current problems [he is] having with [his] back now are the proximate result of" Defendant Vital Core Health Strategies' employees' "'custom' of breaching the applicable standard of care to indigent inmate(s) and/or inmate(s) who are harmed in facility[-]related incidents." (Am. Compl., ECF No. 7, PageID.37.)  Plaintiff's claims against Vital Core Health

Strategies suffer from the same defect as his claims against Kent County—specifically, although Plaintiff alleges in a conclusory manner that a custom that was the moving force behind his injuries, the *facts* alleged by Plaintiff show that it was the actions of the individual medical Defendants that resulted in his injury, not a policy or custom. *See Iqbal*, 556 U.S. at 678; *cf. Rayford v. City of Toledo*, No. 86-3260, 1987 WL 36283, at *1 (6th Cir. Feb. 2, 1987); *see also Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff's allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). The fact that all of the individual medical Defendants allegedly provided inadequate medical care to Plaintiff does not in itself constitute a custom for purposes of a § 1983 claim. Instead, Plaintiff seeks to hold Vital Core Health Strategies liable "based on the acts of its employees alone," which is insufficient to state a § 1983 claim against Vital Core Health Strategies. *Lipman*, 974 F.3d at 747 (citation omitted).

Accordingly, for these reasons, Plaintiff fails to state a claim against Kent County, Vital Core Health Strategies, and the individual Defendants in their official capacities.

### C.    Failure to Protect Claims and Medical Care Claims

When setting forth his failure to protect and medical care claims, Plaintiff references the Eighth Amendment and Fourteenth Amendment. However, it appears that Plaintiff was a pretrial detainee at the time of the events at issue in the complaint. As explained below, as a pretrial detainee, Plaintiff's claims are properly

brought pursuant to the Fourteenth Amendment, and any intended Eighth Amendment claims will be dismissed.

Until recently, the Sixth Circuit "analyzed Fourteenth Amendment pretrial detainee claims and Eighth Amendment prisoner claims 'under the same rubric.'" *Greene v. Crawford Cnty.*, 22 F.4th 593, 605 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 591 (6th Cir. 2021)). However, in *Kingsley v. Hendrickson*, the United States Supreme Court differentiated the standard for excessive force claims brought by pretrial detainees under the Fourteenth Amendment's Due Process Clause from those brought by convicted prisoners under the Eighth Amendment. 576 U.S. 389, 392–93 (2015). Specifically, the United States Supreme Court held "that a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Id.* at 396–97.

However, *Kingsley* left unanswered the question of "whether an objective standard applies in other Fourteenth Amendment pretrial-detainment context[s]." *Brawner*, 14 F.4th at 592. Subsequently, in *Brawner*, the Sixth Circuit modified the second prong of the deliberate indifference test applied to pretrial detainees to require only recklessness. *Id.* at 592, 596. At issue in *Brawner* was a pretrial detainee's claim for deliberate indifference to medical needs. The Sixth Circuit held that to show deliberate indifference, "[a] pretrial detainee must prove 'more than negligence but less than subjective intent—something akin to reckless disregard.'" *Id.* at 596–97 (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)); *see also Helphenstine v. Lewis Cnty., Ky.*, 60 F.4th 305, 316–17 (6th Cir. 2023)

15

(affirming that *Kingsley*, as interpreted by *Brawner*, required courts to "lower the subjective component from actual knowledge to recklessness").  That is, a pretrial detainee must show that the defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known."  *Brawner*, 14 F.4th at 596 (citation and quotation marks omitted).  Further, a pretrial detainee must still show that he faced a sufficiently serious risk to his health or safety to satisfy the objective prong.  *Cf. Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022) (stating that "*Brawner* left the 'objectively serious medical need' prong untouched"); *Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

### 1.    Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic

Plaintiff alleges that on October 22, 2024, "one of the 'John Doe' deputie(s)" "communicated a false statement to" Defendant Inmate John Doe via the intercom, stating that Plaintiff had "called silent observer and got [the inmate's] visit cancelled."  (Am. Compl., ECF No. 7, PageID.35–36.)  Further, Plaintiff claims that at some point later on October 22, 2024, one of the "John Doe" deputies had let Defendant Inmate John Doe "out of his cell during [Plaintiff's] dayroom time while the other two Defendant(s) allowed him to, knowing said false statement [regarding Plaintiff calling silent observer], and [the] action of letting that inmate out [of] his cell placed [Plaintiff] in serious imminent danger."  (*Id.*, PageID.36.)  Plaintiff also claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant

Pavlovic "allowed" Defendant Inmate John Doe "out of his cell for a scheduled visit," and that Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "observed the harm done to [Plaintiff's] person and/or had reason to know that [Plaintiff] was being battered or would be due to the fact the incident [wa]s caught on [the] housing unit camera." (*Id.*, PageID.34–35.) Additionally, Plaintiff alleges that he "had been previously submitting kites" to Defendants Lieutenant Pavlovic and Captain Lyons "in regards to [Plaintiff's] security level not being proper, and that [Plaintiff] feared being housed with alleged murderers for safety reason[s]." (*Id.*, PageID.35.) Plaintiff alleges that Defendants Lieutenant Pavlovic and Captain Lyons did not respond to Plaintiff's kites. (*Id.*)

As to Plaintiff's failure to protect claims regarding the Defendant "John Doe" deputies telling another inmate that Plaintiff was a "snitch" and then letting Plaintiff out of his cell with the other inmate despite knowing about this false statement, although Plaintiff's allegations lack specificity as to which of the "John Doe" deputies (i.e., Defendants Deputies John Does #1–3) took each specific action, viewing Plaintiff's allegations in the light most favorable to him, the Court will not dismiss Plaintiff's failure to protect claims against these Defendants at this time. Likewise, with respect to Plaintiff's allegation that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic each had some involvement in "allow[ing]" Defendant Inmate John Doe "out of his cell for a scheduled visit," although this claim lacks specificity as to what each Defendant's involvement entailed, the Court will also not dismiss this claim at this time.

17

However, as to Plaintiff's allegation that prior to the incident with the other inmate, Plaintiff "had been previously submitting kites" to Defendants Lieutenant Pavlovic and Captain Lyons "in regards to [Plaintiff's] security level not being proper, and that [Plaintiff] feared being housed with alleged murderers for safety reason[s]," as explained below, this allegation is insufficient to show that Defendants Lieutenant Pavlovic and Captain Lyons knew of a substantial risk of harm to Plaintiff.  (*Id.*, PageID.34–35.)  As an initial matter, it is not clear that Defendants Lieutenant Pavlovic and Captain Lyons received the kites that Plaintiff references.  (*See id.*)  And, Plaintiff fails to allege any facts to suggest that Defendants Lieutenant Pavlovic and Captain Lyons knew of a substantial risk of harm to Plaintiff or other inmates from Defendant Inmate John Doe.  Moreover, even setting this issue aside, Plaintiff's vague concern about his "security level not being proper" and the possibility of "being housed with alleged murderers," without additional supporting facts, fails to satisfy the objective prong of the relevant two-prong standard because Plaintiff fails to allege facts to show that he faced a sufficiently serious risk to his health or safety.  *Cf. Hyman*, 27 F.4th at 1237.  Therefore, Plaintiff's Fourteenth Amendment failure to protect claims against Defendants Lieutenant Pavlovic and Captain Lyons regarding the kites Plaintiff sent to them prior to the October 22, 2024, altercation will be dismissed for failure to state a claim.

Accordingly, for the reasons set forth above, at this time, the Court will not dismiss Plaintiff's Fourteenth Amendment failure to protect claims against Defendants Deputies John Does #1–3, Lieutenant Pavlovic, and Captain Lyons

regarding the October 22, 2024, altercation between Defendant Inmate John Doe and Plaintiff while they were both in the dayroom.  All other failure to protect claims against these Defendants will be dismissed for failure to state a claim.

### 2. Defendants Physician Jane Doe #1, Nurses Jane Does #2–3, and Physician John Doe #5

As to the medical Defendants (Defendants Physician Jane Doe #1, Nurses Jane Does #2–3, and Physician John Doe #5), Plaintiff alleges that from October 22, 2024, "through the present," these Defendants "breached their duty to provide [Plaintiff] the appropriate standard of care for [his] injuries that resulted from the battery." (Am. Compl., ECF No. 7, PageID.36.)  Specifically, Plaintiff alleges that Defendants Physicians Jane Doe #1 and John Doe #5 "made a statement in similarity in regards to [Plaintiff's] continu[]ous back problems, stating, 'he's a young guy, he will heal,'" and "also refused to give [Plaintiff] a[n] x-ray on [his] back."  (*Id.*, PageID.36–37.) Plaintiff states the "x-ray was only completed on January 25, 2025." (*Id.*, PageID.37.)

With respect to Defendants Physicians Jane Doe #1 and John Doe #5, at this stage of the proceedings, the Court will not dismiss Plaintiff's medical care claims against these Defendants regarding their involvement in the delay in providing Plaintiff with an x-ray for his injuries.  However, with respect to Defendants Nurses Jane Does #2–3, besides Plaintiff's conclusory allegation that they "breached their duty to provide [Plaintiff] the appropriate standard of care for [his] injuries," Plaintiff fails to allege any *facts* to support this assertion.  (*See id.*, PageID.36.)  Under these circumstances, Plaintiff fails to state any claim against Defendants Nurses Jane Does #2–3 upon which relief may be granted, and his federal claims against them will

be dismissed.  *See, e.g.*, *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

### D.    Procedural Due Process Claims and Retaliation Claims Regarding "D.R.U. Violation"

Plaintiff alleges that after the attack by Defendant Inmate John Doe, one of the Defendant "John Doe" deputies and Defendant Sergeant John Doe #4 "used the category (2) D.R.U. violation for the ulterior purpose to punish [Plaintiff] for attempting to act in self-defense, with them using process improperly to deprive [Plaintiff] of [his] pre-trial liberties for [ten] days without adequate process."  (Am. Compl., ECF No. 7, PageID.35.)  The Court generously construes this allegation to raise a Fourteenth Amendment procedural due process claim and a First Amendment retaliation claim.

First, turning to any intended Fourteenth Amendment procedural due process claim, to state a claim regarding a procedural due process violation, a plaintiff must show that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson*, 209 F. App'x 456, 458 (6th Cir. 2006).  Here, although Plaintiff alleges that he received a "category (2) D.R.U. violation," Plaintiff fails to allege any facts about what this entailed.  (*See* Am. Compl., ECF No. 7, PageID.35.)  Plaintiff vaguely references a loss of his "pre-trial liberties . . . without adequate process," however, he fails to allege any facts to explain what actually occurred to deprive him

of his "pre-trial liberties . . . without adequate process." (*Id.*)  Although the Court must liberally construe Plaintiff's claims at this stage of the proceedings, the Court need not, and should not, manufacture a claim for Plaintiff.    Under these circumstances, Plaintiff's "[t]hreadbare recitals of the elements of a [procedural due process claim], supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.    Accordingly, any intended Fourteenth Amendment procedural due process claims will be dismissed for failure to state a claim.

Next, turning to any intended First Amendment retaliation claim, as explained below, Plaintiff fails to state a retaliation claim regarding his receipt of a "category (2) D.R.U. violation."    Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff's retaliation claim fails at the first step because he does not allege that he engaged in any protected conduct prior to any alleged adverse action.

Although Plaintiff claims that he was "punished" for acting in self-defense, Plaintiff acknowledges that he had a physical altercation with Defendant Inmate John Doe, and any physical violence, whether it was in self-defense or not, does not constitute protected conduct for purposes of Plaintiff's First Amendment retaliation claim. Therefore, to the extent Plaintiff intended to bring a First Amendment retaliation claim, his "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for the reasons set forth above, any intended Fourteenth Amendment procedural due process claims and First Amendment retaliation claims regarding Plaintiff's receipt of a "category (2) D.R.U. violation" will be dismissed for failure to state a claim. Plaintiff does not specifically name Defendant Sergeant John Doe #4 in any other claims, and as set forth below, Plaintiff's § 1983 conspiracy claims will be dismissed for failure to state a claim. Therefore, Defendant Sergeant John Doe #4 and all of Plaintiff's federal claims against him will be dismissed for failure to state a claim.

### E.    Section 1983 Civil Conspiracy Claims

In Plaintiff's amended complaint, he indicates that he is bringing a "civil conspiracy" claim. (Am. Compl., ECF No. 7, PageID.36.) The Court construes this reference to raise civil conspiracy claims under 42 U.S.C. § 1983.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

When setting forth his civil conspiracy claim, Plaintiff provides the following facts in support of this claim: on October 22, 2024, one of the "John Doe" deputies let Defendant Inmate John Doe "out of his cell during [Plaintiff's] dayroom time while the other two Defendant(s) allowed him to, knowing said false statement [regarding Plaintiff calling silent observer], and [the] action of letting that inmate out [of] his cell placed [Plaintiff] in serious imminent danger." (Am. Compl., ECF No. 7, PageID.36.) Although Plaintiff vaguely alleges that two of the "John Doe" deputies knew that the other "John Doe" deputies' statement to Defendant Inmate John Doe

was false, besides this allegation, Plaintiff does not specifically allege that any "agreement" or "plan" existed between Defendants. (*See generally id.*) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Moreover, even assuming, without deciding, that Plaintiff intended to bring civil conspiracy claims against all Defendants, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences involving Defendants. Plaintiff appears to rely entirely on a highly attenuated inference of a conspiracy from the mere fact that each Defendant took actions against him within a short period of time.

As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, and instead, alleges that on discrete occasions, Defendants allegedly took actions against him, Plaintiff fails to state a plausible § 1983 civil conspiracy claim.

F.      State Law Claims

When setting forth his claims, Plaintiff lists several state law claims.  (*See generally* Am. Compl., ECF No. 7.)

As an initial matter, claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982).  Section 1983 does not provide redress for a violation of a state law.  *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994).  Therefore, Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues."  *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).  Here, Plaintiff's federal claims against Defendants Kent County, Vital Core Health Strategies, Inmate John Doe, Nurses Jane Does #2–3, and Sergeant John Doe #4 will be dismissed, and the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.  Because Plaintiff continues to have pending federal claims against Defendants Deputies John Does #1–3, Captain Lyons, Lieutenant Pavlovic, Physician Jane Doe #1, and Physician John Doe #5, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims against these Defendants.

## Conclusion

For the foregoing reasons, Plaintiff's "motion to alter and amend and/or relief from judgment" (ECF No. 8) will be denied as moot.  Further, having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims against Defendants Kent County, Vital Core Health Strategies, Inmate John Doe, Nurses Jane Does #2–3, and Sergeant John Doe #4 will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Kent County, Vital Core Health Strategies, Inmate John Doe, Nurses Jane Does #2–3, and Sergeant John Doe #4 will be dismissed without prejudice.  The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Deputies John Does #1–3, Captain Lyons, Lieutenant Pavlovic, Physician Jane Doe #1, and Physician John Doe #5: official capacity claims; Eighth Amendment claims; Fourteenth Amendment failure to protect claims against Defendants Lieutenant Pavlovic and Captain Lyons regarding the kites Plaintiff sent to them prior to the October 22, 2024, altercation; any intended Fourteenth Amendment procedural due process claims and First Amendment retaliation claims regarding Plaintiff's receipt of a "category (2) D.R.U. violation"; and § 1983 civil conspiracy claims.

The following claims against Defendants Deputies John Does #1–3, Captain Lyons, Lieutenant Pavlovic, Physician Jane Doe #1, and Physician John Doe #5 in their individual capacities remain in the case: Fourteenth Amendment failure to protect claims against Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic, and medical care claims against Defendants Physicians Jane

26

Doe #1 and John Doe #5; and state law claims against all remaining Defendants. Plaintiff's amended complaint will be served on Defendants Deputies John Does #1–3, Captain Lyons, Lieutenant Pavlovic, Physician Jane Doe #1, and Physician John Doe #5.

An order consistent with this opinion will be entered.

Dated:  February 20, 2025          /s/ Phillip J. Green
                                   PHILLIP J. GREEN
                                   United States Magistrate Judge