UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

T<small>YRELLE</small> M<small>OTRAY</small>
H<small>ENDERSON</small>, J<small>R</small>.,

    Plaintiff,                              Hon. Phillip J. Green

v.                                              Case No. 1:24-cv-1270

B<small>RAD</small> L<small>YONS</small>, et al.,

    Defendants.
_____/

## OPINION

This matter is before the Court on Defendant Brad Lyons and Unknown Pavlovic's Motion to Dismiss. (ECF No. 33). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). For the reasons discussed herein, Defendants' motion will be denied.

## BACKGROUND

Plaintiff is presently incarcerated at the Kent County Correctional Facility (KCCF) in Grand Rapids, Michigan. The events about which he complains appear to have occurred when Plaintiff was a pretrial detainee. (*See* ECF No. 11 at PageID.62).

The Court previously summarized Plaintiff's amended complaint. The following allegations are relevant to Defendants' Motion to Dismiss:

-1-

Plaintiff alleges that on October 22, 2024, while detained at KCCF, "one of the 'John Doe' deputie(s)" "communicated a false statement to" Defendant Inmate John Doe via the intercom, stating that Plaintiff had "called silent observer and got [the inmate's] visit cancelled." (*Id.*, PageID.35–36.) Plaintiff claims that Defendant Inmate John Doe "communicated this false statement to other inmate(s) in the dayroom and eventually other parts of the facility," which "harmed [Plaintiff's] reputation." (*Id.*, PageID.36.) Plaintiff claims that "now numerous inmates" at KCCF "believe and have been calling [him a] snitch[] and an informant." (*Id.*)

At some point later on October 22, 2024, Plaintiff alleges that Defendant Inmate John Doe "performed harmful contact with the intention to cause great bodily harm to [Plaintiff's] person." (*Id.*, PageID.34.) Plaintiff states that this interaction occurred in the dayroom, and as a result, Plaintiff's "back, ribs, arm, head, and knee got injured and there was also a blood clo[t] in [Plaintiff's] eye." (*Id.*)

Plaintiff claims that one of the Defendant "John Doe" deputies had let Defendant Inmate John Doe "out of his cell during [Plaintiff's] dayroom time while the other two Defendant(s) allowed him to, knowing said false statement [regarding Plaintiff calling silent observer], and [the] action of letting that inmate out [of] his cell placed [Plaintiff] in serious imminent danger." (*Id.*, PageID.36.) Plaintiff also claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "allowed" Defendant Inmate John Doe "out of his cell for a scheduled visit" pursuant to KCCF's "'custom' to allow visits in the dayroom when it's not the inmate[] who has the visit scheduled dayroom time, nor was this particular inmate suppose[d] to be let out [of] his cell due to his visit being priorly rescheduled." (*Id.*) Additionally, Plaintiff alleges that KCCF has a "'custom' of allowing bottom deck housing unit inmate(s) out [of] their cell during the top deck housing unit inmate(s) dayroom time," which he claims "is the proximate cause of [his] injuries" from Defendant Inmate John Doe's attack. (*Id.*, PageID.35.)

Plaintiff further claims that Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic "observed the harm done to [Plaintiff's] person and/or had reason to know that [Plaintiff] was being battered or would be due to the fact the incident [wa]s caught on [the] housing unit camera," and Plaintiff "had been previously submitting kites" to Defendants Lieutenant Pavlovic and Captain Lyons "in regards to [Plaintiff's] security level not being proper, and that [Plaintiff] feared

-2-

> being housed with alleged murderers for safety reason[s]." (*Id.*, PageID.34–35.) Plaintiff alleges that Defendants Lieutenant Pavlovic and Captain Lyons had not responded to Plaintiff's kites, and "no administrative staff would give [Plaintiff] a grievance." (*Id.*, PageID.35.)

(ECF No. 11 at PageID.52-54).

On February 20, 2025, the Court reviewed the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c) and dismissed several of Plaintiff's claims. (ECF No. 11, 12). With respect to Defendants Lyons and Pavolic, the Court dismissed Plaintiff's Fourteenth Amendment failure to protect claim based on the kites Plaintiff sent prior to the October 22, 2024, altercation. (ECF No. 12 at PageID.77). But the Court did not dismiss the other failure to protect claim because "Defendants Deputies John Does #1–3, Captain Lyons, and Lieutenant Pavlovic each had some involvement in 'allow[ing]' Defendant Inmate John Doe 'out of his cell for a scheduled visit[.]'" (*Id.*)

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint by evaluating the assertions therein in a light most favorable to Plaintiff to determine whether such states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2000). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the

complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of "entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]" – "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

## ANALYSIS

Defendants contend that they are entitled to qualified immunity. The doctrine of qualified immunity provides that government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional right of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). An "objective legal reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987). The qualified immunity inquiry requires a court to decide whether the facts as alleged or shown make out a constitutional violation and whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). If the court can conclude either that no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either prong of the inquiry without regard to sequence. *Id.* at 236.

### I. Constitutional Violation

The Court must first determine the proper standard to evaluate Plaintiff's failure to protect claim. The Fourteenth Amendment protects detainees from being "punished prior to an adjudication of guilt[,]" *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while the Eighth Amendment protects convicted prisoners from "cruel and unusual

punishments," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Under the Eighth Amendment, a prisoner must allege facts meeting both an objective element of seriousness and a subjective element of culpability. *See Westmoreland v. Butler Cnty.*, 29 F.4th 721, 728 (6th Cir. 2022). Under the Fourteenth Amendment, a detainee need only make "an objective showing that an individual defendant acted (or failed to act) deliberately and recklessly." *Id* at 729. In other words, "what violates the Fourteenth Amendment doesn't necessarily violate the Eighth Amendment." *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339 at *2 (6th Cir. 2023).

Here, the Court presumes Plaintiff is a pretrial detainee because he is incarcerated at the Kent County Correctional Facility. Moreover, nothing in the record suggests that Plaintiff was a convicted prisoner at the time of October 22, 2024 altercation. The Court, therefore, will analyze Plaintiff's failure to protect claims under the Fourteenth Amendment.

To state a failure-to-protect claim under the Fourteenth Amendment, a plaintiff must show that "(1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, although a reasonable officer in his position would have appreciated the high degree of risk involved—making the consequences of his conduct obvious; and (4) the defendant caused the plaintiff's

injuries by not taking such measures." *McGowan v. Herbert*, No. 22-2033, 2023 WL 2945341 at *2 (6th Cir. Apr. 14, 2023) (cleaned up).

Construing the complaint liberally, Plaintiff has stated a viable Fourteenth Amendment failure to protect claim against Defendants Lyons and Pavlovic. First, he alleges that Defendants Lyons and Pavlovic had at least some involvement in letting Inmate John Doe out of his cell for a scheduled visit. Their involvement amounts to an "intentional decision" regarding Plaintiff's conditions of confinement. Second, he alleges that "one of the 'John Doe' deputie(s)" "communicated a false statement" to Inmate John Doe via the intercom, which eventually spread to other inmates and "now numerous inmates" at KCCF "believe and have been calling [him a] snitch[] and an informant." (ECF No. 7 at PageID.36). The Sixth Circuit has held that a substantial risk of serious harm existed where the plaintiff was identified as a snitch by another inmate that knew him and subsequently informed all the plaintiff's cellmates he was an informant. *See Westmoreland*, 29 F.4th 721 at 729 (citing Comstock v. McCrary, 273 F.3d 693, 699 n.2 (6th Cir. 2001)).

The third element—whether Defendants acted with reckless disregard in the face of an unjustifiably high risk of harm—is a close call. While Plaintiff does not allege that Defendant Lyons or Pavlovic had any knowledge of Inmate John Doe's belief that Plaintiff was an informant, the alleged "false statement" was communicated via the intercom. Although Defendants Lyons and Pavlovic may have acted negligently, the question is better answered at the summary judgment stage.

Finally, Plaintiff has sufficiently alleged that by not taking any measure, Defendants' decision to release Inmate John Doe caused Plaintiff's injuries.

Defendants' arguments to the contrary are without merit. First, some of the cases cited in their brief analyze the failure to protect claims under the more rigorous Eighth Amendment standard. *See Ross v. Kent, County of et al.*, Case No. 1:24-cv-32-PJG, 2025 WL 850261 at *2-3 (W.D. Mich. Mar. 19, 2025); *Davis v. Chorak*, 624 F. Supp. 3d 870 (W.D. Mich. 2022), *aff'd*, Case No. 22-1839, 2023 WL 2487339 (6th Cir. Mar. 14, 2023).[1] In their reply, Defendants assume that the Eight Amendment applies. (ECF No. 55 at PageID.241). This Court disagrees. Second, none of the cases cited by Defendants involve other inmates believing the plaintiff was an informant. "[I]t is 'common knowledge that snitches face unique risks in prison.'" *Westmoreland*, 29 F.4th 721 at 729 (quoting Dale v. Poston, 548 F.3d 563, 569–70 (7th Cir. 2008). On this record, the Court finds that Plaintiff stated a Fourteenth Amendment failure to protect claim against Defendants Lyons and Pavlovic.

## II.   Clearly Established

It is "generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Guertin v. Michigan*, 912 F.3d 907, 917 (6th Cir. 2019) (citation omitted). "The reasoning . . . is straightforward: 'Absent any

---

[1] In *Davis*, the district court analyzed the failure to protect claim under the Eighth Amendment. On appeal, the Sixth Circuit did not directly decide the issue because it found that the plaintiff's claim failed under both the Eighth and Fourteenth Amendment. *Davis v. Chorak*, No. 22-1839, 2023 WL 2487339 (6th Cir. Mar. 14, 2023)

factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is "obvious" or "squarely governed" by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not' for purposes of determining whether a right is clearly established." *Id.* (quoting *Evans-Marshall v. Bd. of Educ. of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)).

This case is no exception. As mentioned above, the Sixth Circuit has recognized that being identified as a "snitch" in prison puts an inmate at substantial risk of assault. Because of ambiguity in the record, the Court finds that further factual development is necessary to determine whether the right was clearly established.

## CONCLUSION

Accordingly, Defendants' Motion to Dismiss (ECF No. 33) will be denied. An Order consistent with this Opinion will enter.

Date: May 19, 2025    /s/ Phillip J. Green
                                                                                                  PHILLIP J. GREEN
                                                                                                  United States Magistrate Judge